UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RED EYED JACKS SPORTS BAR INC. d.b.a. CHEETAH'S NIGHTCLUB,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO and SHELLEY ZIMMERMAN, in her official capacity as Chief of Police<br>    Defendants. | Case No. 14-cv-0823-L(RBB)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND [DOC. 3.] AND DISMISSING MOTION FOR PRELIMINARY INJUNCTION AS MOOT [DOC. 7]** |

Pending before the Court is Defendants' motion to dismiss for failure to state a claim. (*MTD* [Doc. 3].) The motion is fully briefed. (*Opp'n* [Doc. 5]; *Reply* [Doc. 6].) The Court found this motion suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d.1). (*Order re: Oral Argument* [Doc. 9].) For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion with leave to amend. In light of this dismissal, the pending motion for preliminary injunction is **DISMISSED AS MOOT** as it is based on the current Complaint. (*Mot. Prelim. Inj.* [Doc. 7].)

//

//

## I. BACKGROUND

According to the Complaint, Plaintiff Red Eyed Jacks Sports Bar Inc. d.b.a. Cheetah's Nightclub ("Cheetah's") is a Nevada Corporation "duly qualified to do business in California with the California Secretary of State." (*Compl*. [Doc. 1] ¶ 6.) It is "the duly qualified and current holder of the fictitious business name of Cheetah's Nightclub," a "'nude entertainment business' as defined in San Diego Municipal Code section §33.3602 and is licensed by Defendant City of San Diego [("San Diego")] under San Diego Municipal Code section §33.3603." (*Id.*) San Diego is a "municipality of the State of California under Article 11, section 2 of the California Constitution and a 'person' subject to suit within the meaning of 42 U.S.C. Section 1983." (*Id.* ¶ 7.)

On July 14, 2013 and March 6, 2014, the vice unit of San Diego's police department sealed off the entrances and exits of Cheetah's, thereby preventing its customers from leaving. (*Compl.* ¶ 14.) Around ten officers entered the nightclub and detained its exotic dancers. (*Id.*) Officers informed the nightclub's management that they were performing inspections pursuant to San Diego Municipal Code § 33.0103(a). (*Id.* ¶ 12, 15.) These inspections lasted four hours and two and a half hours on the respective dates mentioned above. (*Id.* ¶ 16.) The dancers were not allowed to leave the nightclub and were required to present officers with identification and nude entertainer permits, "as required by the municipal code." (*Id.* ¶ 17.) Officers made the dancers stand in two separate lines, subjected them to questioning, and took photographs of their body parts while allegedly making crude remarks. (*Id.* ¶ 18.) Those who orally objected to the lineup and inspection were threatened with arrest. (*Id.* ¶ 22.)

Cheetah's claims the dancers experienced severe emotional distress and anxiety as a result of these inspections. (*Compl.* ¶ 22.) As a result, many of these dancers no longer perform at the nightclub and have either pursued employment at other establishments or moved outside of San Diego. (*Id.* ¶ 23.) The departure of experienced dancers has led to a decrease in the quality of nude entertainment offered by Cheetah's, causing its owners to suffer a loss in income. (*Id.* ¶ 24.) These inspections have allegedly taken place at several nude entertainment businesses and constitute a "practice, policy, usage, or custom of the City of San Diego and its police agents."

(*Id.* ¶ 26.) Lieutenant Kevin Mayer of the San Diego Police Department made an announcement on the radio on March 25, 2014 confirming that these inspections are part of a city-wide policy. (*Id.* ¶ 28.)

On April 7, 2014, Cheetah's filed the instant Complaint, alleging that ch. 3, art. 3, div. 1 and div. 36 of the San Diego Municipal Code are unconstitutionally vague. (*Compl.* ¶¶ 28-29, 33(a), 37(a), 41(a).) Cheetah's claims that the provisions provide "no additional guidelines as to what search and detention provisions are required for First Amendment regulated businesses." (*Id.* ¶ 28.) Further, it alleges that the actions of the officers during both inspections violated the First Amendment speech rights of the nightclub, dancers, and customers "as applied to local jurisdictions by the Fourteenth Amendment." (*Id.*)  They also cause a "chilling effect on freedom of speech and expression." (*Id.* ¶ 37(b).) In addition, these searches and seizures are unconstitutional and do not satisfy the criteria for reasonableness under the Fourth Amendment. (*Id.* ¶¶ 30,41(b).) Finally, both provisions of the San Diego Municipal Code allegedly deprive Cheetah's of the equal protection of the law under the Fourteenth Amendment. (*Id.* ¶ 41(d).)

On June 23, 2014, San Diego moved to dismiss the Complaint for failure to state a claim. (*MTD* 3.) San Diego argues that Cheetah's "has not provided the City with proper notice of the 'ordinance' it now challenges as unconstitutional" and "the City is left guessing as to the exact basis for Plaintiff's claim for relief." (*Id.*) San Diego also contends Cheetah's "has failed to allege sufficient facts to support any of its claims for relief." (*Id.* at 4.) In addition, San Diego maintainss that: (1) the nightclub lacks standing to assert constitutional violations on behalf of third parties; (2) the facial challenges to San Diego's Municipal Code provisions are time barred; and (3) these provisions are not unconstitutionally vague. (*Id.* at 5-7.) Cheetah's opposes, asserting *inter alia,* that it has adequately specified the provisions in the San Diego Municipal Code which it is challenging. (*Opp'n.* 6.) Further, Cheetah's argues that it has standing to assert claims on behalf of third parties, the statute of limitations has not expired, and the provisions are unconstitutionally vague. (*Id.* at 7, 9, 11.)

//
//

## II. LEGAL STANDARD

**Rule 12(b)(6) – Motion to Dismiss – Failure to State a Claim**

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a

motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III.   DISCUSSION

#### A.   Sufficiency of Cheetah's Complaint

San Diego first argues that Cheetah's allegations are insufficient because they do not provide San Diego with "proper notice of the 'ordinance' it now challenges as unconstitutional." (*Id.* at 4.) Cheetah's characterizes San Diego's objections as "more a matter of nomenclature" and suggests that it has "state[d] with specificity what it was challenging in the regulatory scheme." (*Opp'n.* 6.) The Court agrees with San Diego.

While the Complaint does specifically challenge San Diego Municipal Code ch. 3, art. 3, div. 1 and div. 36 as unconstitutional, it is unclear which provisions of those divisions are being attacked (*Compl.* ¶ 33.) San Diego Municipal Code ch. 3, art. 3, div. 1 of the Municipal Code contains nine sections, and div. 36 contains eleven sections. (*Compl.* [Docs. 1-3, 1-5].) In light of this, Cheetah's assertions that the Complaint "gives ample notice to Defendants of what Plaintiff is complaining about as required under Rule 8" are unconvincing. (*Opp'n.* 7.) Paragraph 28 of the Complaint claims that the "administration inspection provisions of the San Diego Municipal Code (Article 3 Division One) are unconstitutionally vague" because they do not define what it means for an inspection to be "reasonable." However, there are many "inspection provisions" in the Municipal Code, and it is unclear from the Complaint which provisions are being challenged, under which constitutional provisions they are being challenged, and to what extent they are being challenged.

In light of the foregoing, San Diego's motion on this basis is **GRANTED WITH**

**LEAVE TO AMEND** to allow Cheetah's to specifically indicate which parts of the San Diego Municipal Code they are challenging, and under which constitutional provisions those challenges are made.

### B. Cheetah's Standing to Assert Violations of Third Parties' Constitutional Rights

San Diego next argues that Cheetah's lacks standing since it is impermissibly asserting "the alleged [c]onstitutional rights of third parties, the dancers and the customers[1]" (*MTD* 5.) Cheetah's objects on the grounds that "this is not the law" and an exception to "the general rule that an action asserting speech rights on behalf of customers" exists. (*Opp'n.* 9.) The Court agrees with Cheetah's.

The general rule is that an individual or corporation does not possess standing when he, she, or it attempts to assert the constitutional rights of a third party. *Barrows v. Jackson*, 346 U.S. 249, 255 (1953). However, there is an exception. A plaintiff can assert the constitutional rights of a third party if "the litigant can demonstrate that he or she has suffered a concrete, redressable injury, that he or she has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his or her own interests." *Edmonson v. Leesville*, 500 U.S. 614, 629 (1991).

For this exception to apply, a litigant must seek "relief for an injury that affects him in a 'personal and individual way'." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must "possess a 'direct stake in the outcome' of the case." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). In this instance, Cheetah's asserts that it has "suffered the loss of experienced entertainers thus diminishing the quality of nude performances at Cheetah's" and the loss of "experienced entertainers has caused a loss of income" for the nightclub. (*Compl.* ¶ 24.) These losses are based on alleged violations of third parties'

---

[1] The Court notes that the Complaint clearly states that Cheetah's claims are brought on behalf of its own speech rights, as well as the speech rights of its "entertainers and customers." (*Compl.* ¶ 5.) Therefore, the analysis in this section applies solely to Cheetah's third party claims.

(entertainers and customers) constitutional speech rights. (*Id.* ¶ 4.) By pleading that, as owners of the nightclub, employers of the dancers exercising their alleged rights to speech, and as a business that makes money from its customers exercising their alleged speech rights, Cheetah's has sufficiently alleged a "direct stake" in the outcome of this case. At this point in the proceedings, this is sufficient to establish a redressable injury.

The second prong of the *Edmonson* test focuses on the relationship between the litigant and the third party. The enjoyment of the right being asserted must be closely related to the activity pursued and the litigant must be an effective proponent of the third party. *Singleton v. Wulff*, 428 U.S. 106, 114 - 115 (1976). Where the "activity sought to be protected is at the heart of the business relationship between respondent and its customers," the Supreme Court has "allowed a party to assert the rights of another." *Sec'y of State of Md. v. Munson Co.*, 467 U.S. 947, 947 (1984). As a nude entertainment business, the departure of quality dancers has interfered with the enjoyment of the customers' experience at the establishment. (*Compl.* ¶ 24). This strikes at the heart of the relationship between Cheetah's and its customers; thus, the Complaint sufficiently establishes the second prong of the *Edmonson* test.

Finally, under the last prong of the *Edmonson* test, a hurdle must prevent the third party from asserting its rights. *Edmonson*, 500 U.S. at 629. This prong is subject to an exception, however. "Where the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert [it]s own claims." *Sec'y of State of Md.*, 467 U.S. at 957. Cheetah's is asserting that the inspection provisions of the San Diego Municipal Code are unconstitutionally vague under the First Amendment. (*Compl.* ¶ 28.) Nude entertainment falls within the protection of the First Amendment and is not "prohibited solely because it displays the nude human figure." *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65 - 66 (1981). Therefore, the third prong is satisfied.

As alleged, Cheetah's possesses the standing necessary under the First Amendment to assert the rights of its dancers and customers. However, Cheetah's also appears to bring third party complaints under the Fourth and Fourteenth Amendments. (*Compl.* ¶ 41.) Third party

standing to bring these claims was not addressed by either party. Since the Court is granting Cheetah's the opportunity to clarify its Complaint as to what specific provisions of the San Diego Municipal Code it is challenging as unconstitutional, it will grant the nightclub the opportunity to explicitly plead which other claims, if any, are being brought on behalf of third parties. If Cheetah's is only bringing third party claims with respect to the First Amendment, it shall indicate that in its amended complaint.

In light of the foregoing, San Diego's motion on this basis is **GRANTED IN PART WITH LEAVE TO AMEND**.

### C. Statute of Limitations

San Diego also argues that the "[c]omplaint is time-barred by the statute of limitations applicable to a Section 1983 action." (*MTD* 7.) Specifically, it asserts that the statute of limitations for a facial challenge began to run as soon as the divisions of the San Diego Municipal Code were adopted and that "any lawsuit challenging the constitutionality of these sections had to have been filed by January 11, 1980." (*MTD* 6-7.) Cheetah's response is that San Diego's argument is misplaced and that the "harm accrued when the regulatory scheme [was] enforced." (*Opp'n.* 10-11.) The Court agrees with Cheetah's.

With actions arising under 42 U.S.C. § 1983, "courts apply the forum state's statute of limitations." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983. *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir.1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985) (holding that state personal injury limitation statute governs § 1983 claims). As of January 1, 2003, the statute of limitations for assault, battery, and other claims in California is two years. Cal. Civ. Proc. Code § 335.1 (West Supp. 2004).

However, the Ninth Circuit has serious doubts as to whether facial challenges under the First Amendment can ever be barred by a statute of limitation. *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004). District courts in this Circuit have ignored the statute of limitations in such cases in light of the dubiousness of this defense. One court stated that the "statute of

limitations does not apply to the facial challenge of a statute that infringes First Amendment freedoms as such a statute inflicts a continuing harm." *Napa Valley Publishing Co. v. City of Calystegia*, 225 F. Supp. 2d 1176, 1184 (N.D. Cal. September 6, 2002).  The Court is convinced by the logic in *Maldonado* and *Napa Valley*, and finds that Cheetah's First Amendment claims of facial unconstitutionality are not barred by the statute of limitations.  However, Cheetah's only argues that their First Amendment claims are not time barred, and fails to address whether their other constitutional claims are time barred.  Therefore, the Court must find that Cheetah's remaining facial challenges, (*Compl.* ¶ 41), are time barred.  Cheetah's should address these statute of limitations issues regarding their other constitutional claims in the amended complaint.

In light of the foregoing, San Diego's motion on this basis is **GRANTED IN PART WITH LEAVE TO AMEND.**

### D.     The Court Cannot Rule on San Diego's Unconstitutionally Vague Argument at this Stage

San Diego finally argues that the regulations related to the inspections of Cheetah's are not unconstitutionally vague. (*MTD* 7.)  Cheetah's disagrees and asserts that "what little guidance the regulatory scheme provides is inadequate." (*Opp'n.* 15.)  As the Court explained above, it is not clear from the Complaint which specific sections of ch. 3, art. 3, div. 1 and div. 36 of the San Diego Municipal Code it is challenging.  Therefore, the Court cannot render its opinion on whether Cheetah's has adequately plead that the challenged code sections are "vague."

In light of the foregoing, San Diego's motion on this basis is **DENIED WITHOUT PREJUDICE.**

//
//
//
//
//

### IV. CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss with **LEAVE TO AMEND**. The amended pleading is due on August 4th, 2014. In light of this order, the pending motion for preliminary injunction is **DISMISSED WITHOUT PREJUDICE AS MOOT**. [Doc. 7.]

**IT IS SO ORDERED.**

DATED: July 3, 2014

                                              _____
                                              M. James Lorenz
                                              United States District Court Judge